UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| ALEJANDRA MARTINEZ, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 1:15-CV-100 JD |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

On April 28, 2015, Plaintiff Alejandra Martinez filed a complaint in this Court, seeking review of the final decision of the Defendant Commissioner of Social Security denying her application for social security disability benefits [DE 1]. The matter is fully briefed and ripe for decision [DE 17; DE 22; DE 23]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I. FACTS

Martinez filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") in early 2012, alleging an onset date of January 1, 2007.[1] Martinez cited a variety of conditions as the basis for her disability, including lower back and knee pain,

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 401.1501 *et seq.*, while the SSI regulations are set forth at 20 C.F.R. § 416.901 *et seq*. Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will only be made to the regulations applicable to DIB for clarity.

neuropathy, diabetes, and depression. She later complained of pain in her hands and feet, and was diagnosed with carpal tunnel syndrome[2] and Charcot arthropathy.[3]

Martinez's applications were denied initially in May 2012, and on reconsideration in October 2012. On September 11, 2013, Martinez and a vocational expert ("VE") testified during a hearing held before Administrative Law Judge Patricia Melvin ("ALJ"). Martinez testified that she had previously worked as a customer service representative with Centennial Wireless until December 2009, when she was terminated for needing time off after having used all of her FMLA time. She also worked for two years as a receptionist and home health aide with Covington Commons, but she was terminated for mistreating the elderly people. Martinez indicated that she is unable to work because of the constant pain in her lower back, feet, wrists, and hands, for which she takes Neurontin and Lidoderm. Standing aggravates her foot pain, sitting and walking aggravate her back pain, and using her hands repeatedly ("like when [she] would type," R. at 42) aggravates her hand pain. She acknowledged being diagnosed with carpal tunnel syndrome and rheumatoid arthritis. She believed that she could stand and walk for approximately five to ten minutes, and sit for approximately thirty minutes to one hour.

The VE testified that based strictly on the hypothetical posed to her (which offered an assigned residual functional capacity ("RFC")[4] of sedentary work, limited by no climbing of

---

[2] Carpal tunnel syndrome can cause tingling, numbness, weakness, or pain in the fingers or hands, and symptoms most often occur in the thumb, index finger, middle finger, and half of the ring finger. Risk factors include hand and wrist movements, along with activities that require repeated motions. *WEB*MD, http://www.webmd.com/pain-management/carpal-tunnel/carpal-tunnel-syndrome (last visited Sept. 16, 2016).

[3] Charcot arthropathy, also known as Charcot foot and ankle, is a syndrome in patients who have neuropathy or loss of sensation. It includes fractures and dislocations of bones and joints that occur with minimal or no known trauma. AMERICAN ORTHOPAEDIC FOOT AND ANKLE SOCIETY, http://www.aofas.org/footcaremd/conditions/diabetic-foot/Pages/Charcot-Arthropathy.aspx (last visited Sept. 16, 2016).

[4] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

ladders, ropes, and scaffolds, occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, and crawling, no use of hazardous machinery, and no work involving slippery/uneven surfaces or unprotected heights), Martinez would be capable of performing work as a customer service representative and receptionist, as actually and generally performed in accordance with the Dictionary of Occupational Titles ("DOT").

The ALJ issued a decision on January 8, 2014, denying Martinez disability benefits and concluding that Martinez was not disabled under the Social Security Act because she was able to perform her past work as a customer service representative and receptionist (step 4). Given this finding, the ALJ did not address whether Martinez could perform other work (step 5). The Appeals Council then denied Martinez's request for review on February 26, 2015, making the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Martinez seeks review of the Commissioner's decision thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or

substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. ANALYSIS

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

    1. Whether the claimant is currently engaged in substantial gainful activity;

    2. Whether the claimant has a medically severe impairment;

    3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Martinez's counsel has asserted a host of arguments, and the Court focuses primarily on the argument resulting in remand—the ALJ's inconsistent handling of Martinez's hand limitations which resulted in unsupported RFC and step 4 determinations.[5] The Court also identifies several shortcomings of the ALJ's opinion that shall be addressed on remand.

**A.**     **RFC & Hand Limitations**

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as "other evidence, such as testimony by the claimant." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir.

---

[5] Martinez's counsel argues that the ALJ should have incorporated mental limitations into the RFC determination [DE 17 at 11, 13]. However, counsel did not identify any particular mental limitations that needed to be imposed based on the evidence, and Martinez's testimony established that she did not suffer from mental problems restricting her ability to work.

5

2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id.*; *see* 20 C.F.R. § 404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms, including pain, and how those symptoms affect a claimant's daily life and ability to work). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

In this case, the ALJ repeatedly mentioned Martinez's hand problems, but then failed to articulate an adequate explanation for why no hand limitation (as opposed to just a lifting restriction) was incorporated into the RFC. Specifically, the ALJ noted that although a July 2009 x-ray revealed no hand abnormalities, rheumatologist Dr. Monica Reddy's 2009 examination revealed positive Tinel's and Phalen's signs. R. at 15, 19. Martinez was diagnosed with carpal tunnel syndrome and inflammatory arthritis, and was prescribed Plaquenil. *Id.* The ALJ then noted that "[a]lthough there is no evidence of surgery or other treatment, this diagnosis [of carpal tunnel syndrome] adds to the credibility of the claimant's allegations of wrist and hand pain." R. at 19. Ultimately, the ALJ found that Martinez suffered from the severe impairment of carpal tunnel syndrome, R. at 15, and indicated that the ten pound lifting limit adequately addressed this concern, consistent with reviewing state agent Whitley's October 2012 assessment. R. at 20, 378-85.

But the lifting restriction fails to address Martinez's chief complaint—credited by the ALJ—that Martinez suffers from carpal tunnel syndrome which causes wrist and hand pain that is made worse with repeated use, such as by typing. R. at 18-19. Martinez's testimony in this respect was corroborated by further notations in the medical reports relied on by the ALJ, such

6

as, Dr. Reddy's prescribing carpal tunnel splints in 2009 and Dr. Martin's noting that in 2012 it took Martinez over four years to knit a blanket because she had trouble holding the knitting needles. R. 353-57, 402. The ALJ failed to build a logical bridge when she provided no explanation for why this credited evidence did not support further exertional restrictions with respect to hand or finger manipulation. *See, e.g.*, *Pyle v. Colvin*, No. 2:12-CV-266, 2013 WL 3866730, at *9 (N.D. Ind. July 25, 2013) (noting that carpal tunnel syndrome affects the manipulation of the hands, yet the ALJ did not provide for any manipulation limitations or explain how the limitations found were consistent with the finding of severe carpal tunnel syndrome).

The ALJ's reliance on Whitley's assessment does not bridge that gap because, first, that state agent assessment wholly failed to cite any facts or records supporting the opinion that Martinez had no "manipulative limitations," R. at 381, and second, the ALJ failed to explain why the state agent's opinion would be entitled to any greater weight over the treating physicians' opinions. 20 C.F.R. § 404.1527(c)(2) (noting that generally more weight is given to opinions from treating sources and good reasons must be provided for the weight accorded a treating source's opinion). Moreover, the ALJ failed to explain how the opinion of consultative examiner Bacchus supported Martinez's ability to withstand repeated use of her hands, fingers, and wrists throughout the workday, given that even he recognized Martinez suffered from bilateral carpel tunnel syndrome. *See Pyle*, 2013 WL 3866730, at *9.

To repeat, after the ALJ determined that Martinez suffered from the severe impairment of carpal tunnel syndrome and credited Martinez's complaint that repeated use of her hands made the pain worse, it was the ALJ's duty to explain how that impairment was accounted for in the

7

RFC. 20 C.F.R. § 404.1545. As a result of this disconnect, the Court is unable to conclude that the RFC is supported by substantial evidence with respect to Martinez's hand limitations.

Further necessitating a remand, is the fact that the ALJ then relied upon her flawed RFC determination in deciding that Martinez could perform her past work as a receptionist and customer service representative. R. at 21. More accurately stated, in deciding what work Martinez was capable of performing, the ALJ relied on the VE's testimony, which in turn, relied on the ALJ's hypothetical question that incorporated the inadequately supported RFC determination.

The law requires the ALJ to incorporate into the hypotheticals those impairments and limitations that the ALJ accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Martinez's credited complaints of wrist and hand pain, and therefore, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Martinez is capable of performing.[6] *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. The fact that the VE's testimony in this particular case is not an accurate indicator of Martinez's ability to work is

---

[6] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Martinez's medical records, nor did she indicate in her responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, rather than on the record itself or the limitations of the claimant himself. *Id.* (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

obvious. The VE testified that receptionist and customer service representative jobs are listed in the DOT at codes 237.367-038 and 249.362-026, respectively. Both of the job descriptions include the likelihood of needing to type and enter data into a computer, as well as, needing to often handle items and use one's fingers. DOT, http://www.occupationalinfo.org/ (last visited Sept. 16, 2016). Without testimony from the VE taking into account Martinez's limited ability to repeatedly use her wrists and hands throughout the workday, the Court is unable to rely on the VE's testimony as to whether Martinez is capable of performing her past work as actually or generally performed. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual hand limitations and resulting RFC, 20 C.F.R. §§ 404.1545, 404.1546(c), step four cannot be affirmed in this appeal.[7] *See Young,* 362 F.3d at 1003-05.

**B.     Miscellaneous Issues**

On remand, the following shortcomings in the ALJ's opinion will need to be addressed in order to allow for adequate review.

ALJ's are required to consider all relevant evidence in the record in determining whether an individual is disabled. 42 U.S.C. § 423(d)(5)(B). This includes opinion evidence from "acceptable medical sources," such as licensed physicians; medical sources that do not qualify as "acceptable medical sources," such as nurse practitioners and physician assistants; and non-medical sources, such as former employers. 20 C.F.R. §§ 404.1527(c), 404.1513(d); SSR 06-03p. In addition, the regulations set out factors the ALJ must consider in weighing medical

---

[7] At step four, it will also be necessary for the ALJ to clarify whether Martinez's work as a receptionist lasted long enough for the job to be learned and considered as substantial gainful activity, given Martinez's testimony that she worked for two years as a receptionist *and* home health aide. R. at 35.

opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. § 404.1527.

In this case, the ALJ never indicated the amount of weight she assigned to any treating or examining source opinions, she only summarized exam findings. This type of analysis does not permit adequate review, especially when the only medical opinions that the ALJ weighed were those of the reviewing state agents which supported a finding of non-disability and were given "great weight." As previously mentioned, reasons must be provided for the weight assigned to opinions of examining sources. *Id*.

The ALJ also engaged in impermissible "cherry-picking" by relying on "facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In one instance in particular, the ALJ referred only to a portion of Dr. Isbister's one-page opinion, while omitting the portion that supported a disability finding. Specifically, the ALJ noted that in a letter dated September 9, 2013, Dr. Isbister (the medical director of the Matthew 25 health clinic where Martinez was treated), reported that Martinez had daily foot pain which gave her "limited mobility" and thus "vocational rehab would most constructively be targeted to seated work." R. at 20 (citing R. at 545). Based on these notations, the ALJ characterized Dr. Isbister's opinion as indicating that Martinez had "the capability for seated work." R. at 20. But the ALJ omitted the remainder of Dr. Isbister's statement, which when read in its entirety, stated: "[Martinez] has expressed a willingness to work *but her foot pain and limited mobility make employment impractical at this time*. Vocational rehab would most constructively be targeted to seated work." R. at 545 (emphasis added). Clearly, the portion omitted by the ALJ expressed the opinion that Martinez was incapable of working at the time.

10

Ultimately, Dr. Isbister's *actual* opinion, combined with recent references by treating doctors as to Martinez's ongoing foot pain (and wearing of a foot boot), require the ALJ to reevaluate and adequately explain whether there is in fact "no persuasive evidence" that the claimant could not sit for six to eight hours per day and stand/walk for two hours. R. 17, 20, 215-16, 359-377, 425-451. While the ALJ need not address every piece of evidence in the record, the ALJ must not substitute her own judgment for that of the medical professionals without relying on other authority in the record to permit an informed review. *Lopez*, 336 F.3d at 540. Once the ALJ assesses this information and weighs conflicting medical evidence, if the record is inadequate for the ALJ to make a determination of disability, the ALJ may still request a medical source statement, *see* SSR 96-5p, as suggested by Martinez's counsel. The remedy for the shortcomings noted herein is further consideration, not an award of benefits.

## IV.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  September 21, 2016

/s/ JON E. DEGUILIO
Judge
United States District Court